UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEN-SANO, INC.,
a Michigan corporation,

       Plaintiff,

v.

ASHER, KULLEN & KASSAB, P.C.,
a Michigan professional corporation,

       Defendant,

and

KULLEN & KASSAB, P.C.,
a Michigan professional corporation,

       Interpleader Plaintiff,

v.

DEN-SANO, INC., a Michigan corporation,
INTERNAL REVENUE SERVICE, and
MICHIGAN DEPARTMENT OF
TREASURY,

       Interpleader Defendants.
_____/

Case No. 04-73678

Honorable Patrick J. Duggan

**OPINION AND ORDER**
At a session of said Court, held in the U.S.
District Courthouse, City of Detroit, County of
Wayne, State of Michigan, on September 23, 2005.

    PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                         U.S. DISTRICT COURT JUDGE

Presently before the Court are the United States'[1] Motion for Distribution of Funds, the Denhas' Motion to Intervene as defendants to make a claim against the escrowed funds, the Denhas' Motion to Intervene as party plaintiffs to file a complaint against Defendant Asher, Kullen & Kassab, P.C., and Defendant Asher, Kullen & Kassab, P.C.'s Motion for Summary Judgment. The Court heard oral argument on these motions on March 31, 2005 and on September 8, 2005.

I. **Background**

This case arose after Den-Sano, Inc. [hereinafter "Den-Sano"] sold its business to Mack Liquor & Deli, Inc. [hereinafter "Mack"] on November 23, 2003. The law firm of Asher, Kullen & Kassab, P.C. [hereinafter "Kullen"] represented the buyer during the sale and held $44.621.44 in escrow pending closing and clear title. (*See* Kullen's Mot. for Summ. J., Ex. 1). On November 24, 2003, Den-Sano procured an "Acknowledgment" from Mack authorizing the distribution of the escrowed funds. (Kullen's Mot. for Summ. J., Ex. 2). During the time period between the closing, on November 23, 2003, and the procurement of the Acknowledgment, on November 24, 2003, Kullen contends that it learned the business was encumbered by state and federal tax liens. (Kullen's Br. in Supp. of Mot. for Summ. J. at 3). Kullen did not release the escrowed funds to Den-Sano

On August 30, 2004, Den-Sano filed a complaint against Kullen in the Circuit Court for the County of Oakland, Michigan. In its Amended Complaint, Den-Sano alleges that by

---

[1] Interpleader Plaintiff Kullen & Kassab, P.C., improperly named and sued the Internal Revenue Service. The Court will hereinafter refer to Interpleader Defendant Internal Revenue Service as "the United States."

failing to turn over the escrowed funds, Kullen should be liable for breach of fiduciary duty and breach of contract.

Kullen filed an Interpleader Counter-Complaint against Interpleader Defendants, the United States and the Michigan Department of Treasury, asking the Court to rule on the ownership of the funds so that Kullen would not improperly distribute the funds. On September 15, 2004, Kullen filed a Motion to Interplead Funds pending a determination of the ownership of the funds by the court.

The United States removed the action to this Court on September 22, 2004. On October 4, 2004, the Michigan Department of Treasury filed an Answer to Kullen's Counter-Complaint and a Response to Kullen's Motion to Interplead Funds, indicating that all liens held by the Michigan Department of Treasury against Den-Sano had been satisfied. Therefore, the Michigan Department of Treasury is no longer a party in interest to this lawsuit.

On February 22, 2005, the remaining parties entered into an Order Granting Interpleader Plaintiff Kullen & Kassab, PC's Motion to Interplead Funds Pursuant to FRCP 22, which was approved by all remaining parties. Thus, the sum of $44,621.44 was deposited into an account with the Clerk of Court pending a final determination of the various claims to those funds.

The following motions have arisen as a result of parties claiming rights to the funds: (1) on December 2, 2004, the United States filed a Motion for Distribution of Funds; (2) on December 15, 2004, Hazim Z. Denha and Ahlam Y. Denha [hereinafter "Hazim" or "Ahlam" or "the Denhas"] filed a Motion to Intervene as defendants in order to make a claim against

3

the funds; (3) on December 30, 2004, the Denhas filed a Motion to Intervene as plaintiffs to proceed against Kullen; and (4) on July 7, 2005, Kullen filed a Motion for Summary Judgment.

**II.   Applicable Law and Analysis**

The parties' motions raise the following issues: (1) Should escrowed funds be distributed to the United States?; (2) Should the Denhas be able to intervene as defendants to make a claim against the funds?; (3) Should the Denhas be able to intervene as plaintiffs to file a complaint against Kullen?; and (4) Whether Kullen is entitled to judgment as a matter of law where the escrowed funds have been deposited with the Court and where the terms of the escrow agreement specifically limited Kullen's liability.

1.   The U.S.'s Motion for Distribution of Funds

According to the United States, Den-Sano still owes the United States $58,457.26. (U.S. Response to Kullen's Mot. for Summ. J., Ex. 1, Hannum Decl. at ¶ 3). The United States contends that the $44,621.44 in escrowed funds should be distributed to the United States so that it may apply the funds to Den-Sano's tax liabilities, citing *Muntwyler v. United States*, 703 F.2d 1030, 1032 (7th Cir. 1983). In *Muntwyler*, the Court held that "[w]hen a payment is involuntary, IRS policy is to allocate the payments as it sees fit." *Id.* An involuntary payment is defined as "any payment received by agents of the United States as a result of distraint or levy from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor." *Amos v. Commissioner*, 46 T.C. 65, 69 (1966). Moreover, the Sixth Circuit has held that when the taxpayer has both trust fund and non-trust fund liabilities, and the IRS receives a payment that is involuntary:

4

> [T]he IRS makes the allocation, applying the money first to non-trust fund taxes. Because the personal liability of the responsible persons provides an additional source for collection of trust fund taxes, this approach allows the government to maximize its total recovery.

*In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988).

The Denhas, who are the owners of Den-Sano, Inc., contend that the United States has not levied on the escrowed funds because the funds were held in escrow by Kullen; Den-Sano, Inc., never had control over the funds. However, Kullen acting as Den-Sano's agent during the sale, had control over the funds. Therefore, this constitutes an involuntary payment. Consequently, the United States believes that it is entitled to the funds to apply to whichever tax liabilities it chooses. As set out below, the Court believes that the United States is entitled to the funds, however, a portion of the funds must be applied to the Denhas' personal tax liabilities.

2.  <u>The Denhas Motion to Intervene as Defendants to make a claim against the funds</u>

The Denhas move to intervene as defendants pursuant to FED. R. CIV. P. 20 and FED. R. CIV. P. 22. Rule 20 provides, in pertinent part:

> **(a) Permissive Joinder.** All persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

FED. R. CIV. P. 20(a).

Moreover, Rule 22 provides, in pertinent part:

> Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. . . . The provisions of this rule supplement and do not in any way limit the joinder of parties permitted in Rule

5

20.

FED. R. CIV. P. 22(1).

The Denhas were officers of Den-Sano and had invested their own money in the company. In March 2002, the Denhas paid off the Michigan state tax liens filed against Den-Sano. The Denhas contend that they sold their house to pay off the state tax liens filed against Den-Sano, Inc. in order to protect Mr. Denha's shareholder interest in Den-Sano, Inc.

The Denhas are liable to the United States under 26 U.S.C. § 6672 for withholding income taxes from employees covered by the IRS liens at issue in this case. The Denhas are presently in Bankruptcy Court, Chapter 13, and the IRS has made a claim against them for those taxes. (Denhas' Reply Br. at 3). The Denhas, as officers of Den-Sano, assert that they will have to pay those taxes off through their Chapter 13 plan. (*Id.*).

As a result, the Denhas contend that they were going to use the money received from the escrow agent to pay against the trust fund taxes. (*Id.*). However, they never had the opportunity to do so because Kullen refused to release the escrowed funds to them. (*Id.*). The Denhas argue that Den-Sano, Inc., should not lose the ability to designate where the funds should be applied simply because Kullen refused to honor the escrow agreement, especially where most of the funds are still available to the IRS because the Denhas paid off the superior state tax liens, which were ahead of all but the August 12, 1999 federal tax lien.[2] (*Id.*).

The Denhas argue that the doctrine of equitable subrogation should apply because the

---

[2] The August 12, 1999 federal tax lien was for $15,173.91. (Denhas' Resp. Br. Ex. A). However, as of the date of the hearing, the parties were unsure of the lien's exact amount.

6

Denhas paid off $53,509.36 in state tax liens, which were filed prior to all but one of the federal tax liens. In their motion, Denhas asked this Court to ". . . order that any payment of money to be paid over to the IRS be allocated first to the trust fund taxes in order to satisfy Mr. and Mrs. Denha's 26 U.S.C. § 6672 liability," citing *New Terminal Stevedoring v. M/V Belnor*, 728 F. Supp. 62 (D. Mass. 1989). (Denhas' Resp. at 6). Section 6672(a) provides:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

In *New Terminal*, the court ordered that funds that had been interpleaded into court were to be paid over to satisfy trust fund liabilities pursuant to § 6672(a) because the corporate officer caused the funds to be available to the United States in the first place. *New Terminal*, 728 F. Supp. at 66.

The Michigan Supreme Court has noted that "equitable subrogation is a legal fiction through which a person who pays a debt for which another is primarily responsible is substituted or subrogated to all the rights and remedies of the other." *Commercial Union Ins. Co. v. Medical Protective Co.*, 426 Mich. 109, 117, 393 N.W.2d 479, (1986). Under the doctrine of equitable subrogation, the subrogee acquires no greater rights than those possessed by the subrogor, and the subrogee may not be a mere volunteer." *Hartford Accident & Indemnity Co. v. Used Car Factory, Inc.*, 461 Mich. 210, 215, 600 N.W.2d 630, 632 (1999); *see also Lentz v. Stoflet*, 280 Mich. 446, 449-50, 273 N.W. 763, 764 (1937). In order to be entitled to subrogation, the subrogee must not have voluntarily made payment,

7

but must have done so as consequence of his or her fulfillment of a legal or equitable duty owed to the subrogor. *Beaty v. Hertzberg & Golden*, 456 Mich. 247, 254-55, 258, 571 N.W.2d 716, 720, 721-22 (1997). "Equitable subrogation is a flexible, elastic doctrine of equity" and "its application should and must proceed on a case-by-case analysis characteristic of equity jurisprudence." *Hartford Accident & Indemnity Co.*, 461 Mich. At 215, 600 N.W.2d at 632-33.

Applying these principles to the case at hand, the Denhas contend that because they paid off $53,509.36 in state tax liens, the Denhas should be subrogated to the rights and remedies of Den-Sano. At the hearing on March 31, 2005, the government argued that equitable subrogation should not apply because the Denhas *voluntarily* paid the state tax liens. The Denhas provided the Court with an order of the Bankruptcy Court. (Supp. Br., Ex. C). The government argues that the order directs "Den-Sano, Inc." to pay the priority claim of $53,509.36 and "does not direct or compel the Denhas to pay any of Den-Sano, Inc.'s liabilities." (Supp. Br. in Resp. at 2). However, the Denhas, as officers of Den-Sano, Inc., were personally liable for the state tax liens. MICH. COMP. LAWS ANN. § 205.27a(5).

In light of the Michigan statute and the fact that the Bankruptcy Court's Order, although it listed "Den-Sano" to make the payment, was made during the Denhas' bankruptcy proceedings, it is clear that the payment was made involuntarily. Thus, the Court believes that equitable subrogation should apply – at least to the extent that a portion of the escrowed funds shall be distributed to the United States to satisfy the Denhas' personal

liabilities.[3]

At the September 8, 2005 hearing, counsel for the Denhas explained the Denhas' personal tax liabilities only amount to somewhere between $6,000 and $8,000.  The Court does not believe that it would be "equitable" to allow the Denhas to receive the remaining escrowed funds under the doctrine of equitable subrogation where the Denhas were the individuals who failed to pay Den-Sano's taxes.  *See In re Air Crash Disaster*, 86 F.3d 498, 549 (6th Cir. 1996) ("The doctrine of equitable subrogation benefits from the flexibility of application that is characteristic of all equitable remedies. . . . Notions of 'equity and good conscience' should guide a court's application of the doctrine.") . It is undisputed that the funds held in escrow are proceeds from the sale of Den-Sano Inc.'s assets.  Therefore, in this Court's opinion, the remaining escrowed funds from the sale of Den-Sano should be distributed to the United States so that they may be applied to Den-Sano's tax liabilities.

Accordingly, the escrowed funds shall be distributed as follows:

1) Money from the escrowed funds shall be distributed to the United States to satisfy Den-Sano's August 12, 1999 federal tax lien;

2) a portion of the escrowed funds shall be distributed to the United States to satisfy the Denhas' personal liabilities; and

3) the balance of the escrowed funds shall be paid to the United States.

Finally, the Denhas argue that Hazim Denha has an equitable lien on $15,000 of the escrowed funds because, at the time of the sale of Den-Sano, Hazim signed a personal

---

[3] At the hearing on September 8, 2005, Joseph Falcone, Esq., counsel for the Denhas and Den-Sano, agreed that a portion of the escrowed funds should be used to satisfy their personal tax liabilities.

9

covenant not to compete for $15,000. Hazim seeks a constructive trust over $15,000 of the escrowed funds to be held for his benefit.

"Constructive trusts are creatures of equity and their imposition makes the holder of the legal title the trustee for the benefit of another, who in good conscience is entitled to beneficial interest." *Arndy v. Vos*, 83 Mich. App. 484, 487, 268 N.W.2d 693, 694 (1978). "Constructive trusts, while infinite in their variety, are imposed only where it would be inequitable to do otherwise." *Id.* Michigan courts grant equitable liens in situations where written contracts do not reflect the intent of the parties and it would be unfair to allow someone to receive a windfall to the detriment of another. *See Cottrell v. Clark*, 126 Mich. App. 276 (1983).

> With regard to the covenant not to compete, the agreement provided:
>
> For good an [sic] valuable consideration, the receipt and adequacy of which are hereby acknowledged, the undersigned agrees and consents that for a period of Five (5) years commencing on November 24, 2003, and within a radius of Five (5) miles of the premises of a certain business, which business and property are located at 12525 Mack, Detroit, Michigan 48215, they shall not, directly or indirectly, as an individual, partner, stockholder, participant, director, officer, consultant, joint venturer, agent, employee, salesperson, or in any other capacity whatsoever, own, operate or become interested in any business similar to or in any way in competition with the business conveyed to Mack Liquor & Deli, Inc., pursuant to an Agreement of Purchase and Sale dated May 28, 2003, between Del-Sano [sic], Inc., d/b/a Anthony's Liquor & Deli, as Seller, and Mack Liquor & Deli, Inc., as Buyer, to wit a party store.

(Den-Sano's Br. in Resp. to U.S.'s Mot. for Distribution of Funds, Ex. K).

The United States points out that the Bill of Sale plainly states that the consideration would be paid to Den-Sano, Inc. d/b/a Anthony's Liquor & Deli. (Den-Sano's Br. in Resp. to the U.S.'s Mot. for Distribution of Funds, Ex. J). However, the Denhas contend that it

10

would be unfair to allow the United States to benefit from Hazim's personal agreement not to compete because the sale agreement lacked specificity.

The Denhas argue that the Court should not decide that because the bill of sale states that the $15,000 paid for the covenant not to compete should be paid to Den-Sano, Inc., that the $15,000 was meant to be Den-Sano, Inc.'s money.

Clearly the covenant not to compete applied to both Den-Sano, Inc., as well as its owner, Hazim Denha. However, the contract specifically allocates the $15,000 to Den-Sano. "In those cases where the parties have clearly and unequivocally allocated a part of the total [purchase] price to the covenant [not to compete], courts . . . have generally refused to allow a party to subsequently challenge that allocation without a showing of either "strong proof" that the contract as written did not conform to the intent of the parties, or the presence of mistake, undue influence, fraud, or duress. *Patterson v. Comm'r of Internal Revenue*, 810 F.2d 562, 570 (6th Cir. 1987) (internal citations omitted).[4]

Therefore, the Court believes that covenant not to compete allocates the $15,000 to Den-Sano, Inc. Consequently, the Denhas' Motion to Intervene as Defendants to seek a constructive trust over $15,000 of the escrowed funds shall be denied.

3. <u>The Denhas Motion to Intervene as plaintiffs to file a complaint against Defendant Kullen</u>

The Denhas move to intervene as plaintiffs pursuant to FED. R. CIV. P. 20. Rule 20

---

[4] Although *Patterson* dealt with whether a taxpayer had correctly allocated the consideration he received for a covenant not to compete and claimed as ordinary income on a tax return, the Court finds that its interpretation of the plain language of the covenant not to compete is instructive in interpreting the language in the covenant not to compete in this case.

11

provides, in pertinent part:

> **(a) Permissive Joinder.** All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action.

FED. R. CIV. P. 20(a).

The Denhas contend that they have a claim against Defendant Kullen, because the Denhas were third party beneficiaries of the escrow agreement between Plaintiff Den-Sano, Inc. and Kullen, and the Denhas were owed a duty by Kullen to perform their duties as escrow agent in a proper and competent manner.

The Court agrees that the claim of the Denhas arises out of the same transaction, occurrence, or series of transactions and there are common questions of law and fact with respect to the claims of the Denhas and Den-Sano, Inc. against Defendant Asher, Kullen & Kassab, P.C. However, the Court believes that the interests of judicial economy would be better served by first ruling on Defendant Kullen's Motion for Summary Judgment.

4.    <u>Defendant Kullen's Motion for Summary Judgment</u>

Defendant Kullen seeks summary judgment pursuant to Fed. R. Civ. P. 56. In its Motion for Summary Judgment, Defendant Kullen argues that it should be dismissed from this action because Den-Sano has no independent claim against Kullen now that the escrowed funds are deposited with the Court and because the clear and unambiguous terms of the escrow agreement limit Kullen's liability. (Kullen's Br. in Supp. of Mot. for Summ. J. at 4).

This Court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). No genuine issue of material fact exists for trial unless, by viewing the evidence in a light most favorable to the nonmoving party, a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). The moving party bears the burden of informing this Court of the basis for its motion and identifying those portions of the record that establish the absence of a material issue of fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to look beyond the pleadings and designate specific facts showing that a genuine issue exists for trial. FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 322-24, 106 S. Ct. at 2552-53. It is not enough that the nonmoving party comes forward with the "mere existence of a scintilla of evidence . . . ," *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512, or some "metaphysical doubt as to the material facts." *Matsishita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). Rather, the nonmoving party must present significant probative evidence in support of its opposition to the motion for summary judgment. *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

The escrow agreement between Den-Sano and Kullen provides, in pertinent part:

2. **Release of Escrow:** Upon the closing of the purchase and sale transaction contemplated within the Purchase Agreement, the Escrow Amount shall be released to the Seller. If the purchase and sale transaction contemplated within the Purchase Agreement does not close, and the Purchase Agreement is terminated, then the Escrow Amount shall be released to the Purchaser without any further consent from or notice to Seller.

> **3. Liability of Escrow Agent:** Upon disbursement of the Escrow Amount, this Agreement shall terminate and Escrow Agent shall be released from any further liability. It is expressly understood and agreed that the liability of Escrow Agent hereunder is limited by the terms and conditions set forth herein, and by applicable law, and in no event shall the liability of Escrow Agent exceed the amount held in escrow hereunder . . . .

(Kullen's Mot. for Summ. J., Ex. 1).

Moreover, the Purchase Agreement which Den-Sano and Mack entered into specifically provides that "the sale and transfer of the business assets shall be free and clear of all liabilities, obligations, liens, and encumbrances . . . ." (Kullen's Mot. for Summ. J., Ex. 6 at ¶ 1). The Purchase Agreement, under "Seller's Warranties," provides that "Seller hereby warrants and represents . . . that Seller has good and marketable title to all the assets listed on 'Exhibit A'; free and clear of all encumbrances, liens . . . and that Seller has paid all social security, withholding, sales, use and unemployment taxes to all applicable taxing authorities, including Federal, State and Local . . . ." (*Id.*, Ex. 6 at ¶ 7).

"In determining and enforcing the parties' intent . . . the court reads the agreement as a whole and attempts to apply the plain language of the contract itself." *Old Kent v. Sobczak*, 243 Mich. App. 57, 63, 620 N.W.2d 663, 667 (2000). "[W]hen the language of a document is clear and unambiguous, interpretation is limited to the actual words used, and parole evidence is inadmissible to prove a different intent." *Buckhardt v. Bailey*, 260 Mich. App. 636, 656-57, 680 N.W.2d 453, 464 (2004) (internal citations omitted).

In light of the clear and unambiguous language contained in the Escrow Agreement and the Purchase Agreement, Kullen was not authorized to disburse the escrow funds until after Den-Sano had conveyed all of the business assets with clear title, free of all liens and

14

encumbrances. By the terms of the Agreements, when Kullen learned that there were tax liens against the business assets, it properly withheld the funds from Den-Sano. Therefore, because Kullen has now disbursed the escrowed funds to this Court, the Escrow Agreement releases Kullen from any further liability. (Kullen's Mot. for Summ. J., Ex. 1 at ¶ 3). Thus, Kullen is entitled to summary judgment.[5]

Accordingly,

**IT IS ORDERED** that the Denhas' Motion to Intervene as Defendants to make a claim against the escrowed funds is **GRANTED**.

**IT IS FURTHER ORDERED** that the U.S.'s Motion for Distribution of the Escrowed Funds is **GRANTED IN PART AND DENIED IN PART**. The United States shall receive the escrowed funds which will be applied toward the following tax liabilities:

1) Money from the escrowed funds shall be distributed to the United States to satisfy Den-Sano's August 12, 1999 federal tax lien;

2) a portion of the escrowed funds shall be distributed to the United States to satisfy the Denhas' personal liabilities; and

3) the balance of the escrowed funds shall be paid to the United States.

**IT IS FURTHER ORDERED** that the Denhas' Motion to Intervene as Plaintiffs to

---

[5] Kullen seeks actual expenses and attorneys' fees arising from the litigation pursuant to the Escrow Agreement, which provides that the "Seller and Purchaser, jointly and severally, shall reimburse Escrow Agent for all expenses incurred by Escrow Agent, including attorneys' fees . . . ." (Kullen Mot. for Summ. J., Ex. 1). However, because the Purchaser, Mack Liquor, is not a party to this litigation, the Court does not believe that an award of costs and attorneys' fees would be appropriate. Moreover, in general, in order for a party to obtain attorneys' fees, the plaintiff's action must be "frivolous, unreasonable, or without foundation." *Hughes v. Rowe*, 449 U.S. 5, 14, 101 S. Ct. 173, 178 (1980) (citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S. Ct. 694, 700 (1978)). This Court does not believe that Den-Sano's Complaint was "frivolous, unreasonable, or without foundation."

file a complaint against Defendant Kullen is **DENIED** and Kullen's Motion for Summary Judgment is **GRANTED**.  Defendant Kullen is hereby **DISMISSED**.

**IT IS FURTHER ORDERED** that Kullen's Motion for attorneys' fees and costs is **DENIED**.

                s/PATRICK J. DUGGAN
                UNITED STATES DISTRICT JUDGE

Copies to:
Joseph Falcone, Esq.
Jeffrey Klein, Esq.
Richard C. Ambrow, Jr., Esq.